## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————

| | | |
|---|---|---|
| In Re:  Thomas Giacchi, | : | Civil Action No. 5:14-cv-1156 |
| Debtor. | : | |
| ——————————————————— | : | Bankruptcy No. 12-13292 |
| | : | |
| THOMAS GIACCHI, | : | Adv. No. 12-00465 |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Appellee. | : | |

———————————————————————————

## M E M O R A N D U M

**Joseph F. Leeson, Jr.**                                        **September 30, 2015**
**United States District Judge**

## I.      INTRODUCTION

This is a bankruptcy appeal.

Thomas Giacchi ("Giacchi"), appeals from a decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania entering judgment in favor of the United States of America ("Appellee"), and against Giacchi, on Giacchi's Amended Complaint following trial in this adversary proceeding.  Giacchi's Amended Complaint sought relief, inter alia, to have the bankruptcy court determine that Giacchi's unpaid taxes for 2000, 2001, and 2002 were discharged in Giacchi's bankruptcy proceeding, and that if the taxes were not discharged that there were no unpaid taxes due for the three years in question.  The bankruptcy court found that the tax debt in question owed by

1

Giacchi to the Internal Revenue Service was nondischargeable and that the tax assessments filed by the Internal Revenue Service against Giacchi were accurate and correct.

## II.   **BACKGROUND**

### A.   Procedural History

Giacchi initiated this adversary proceeding against the United States of America seeking a determination that his federal taxes for 2000, 2001, and 2002 had been discharged in bankruptcy. In the event the taxes were not discharged, he sought a ruling that he owed no taxes for the three years in question.

The bankruptcy court ruled that the taxes were not discharged under 11 U.S.C. § 523(a)(1)(B) because Giacchi failed to file tax returns for 2000, 2001, and 2002. Specifically, the tax documents filed were not "returns" within the meaning of § 523(a) and applicable nonbankruptcy law.  The bankruptcy court also held that the United States' assessments of Giacchi's taxes, as well as the proofs of claim filed in the bankruptcy case, were correct. Giacchi filed the within appeal from the bankruptcy court's judgment.

### B.   Brief Summary of Facts

#### (1)   Giacchi's failure to timely file tax returns for 2000, 2001, and 2002

Giacchi failed to file federal tax returns for 2000, 2001, and 2002.  The Internal Revenue Service investigated his tax liability for those years and assessed tax against him. After the IRS made tax assessments for each year, Giacchi subsequently filed documents he argues were tax returns. For each year, each return showed that his total tax was lower than the IRS assessment. The IRS then reduced the assessment for each year to equal the tax he claimed were his late filed tax returns.

2

(2)      The IRS assesses tax for 2000 – after which Giacchi files a tax return

For 2000, the IRS completed its investigation on July 12, 2004, and assessed $45,849.20 of tax. Trial Ex. D-1. On November 29, 2004, Giacchi filed a form purporting to be his income tax return for 2000. Trial Ex. P-5. This document stated that Giacchi's total tax for 2000 was $40,524. Trial Ex. P-5, line 57. On May 16, 2005, the IRS abated $5,325.20 of the assessment, Trial Ex. D-1, leaving an assessment of principal tax against Giacchi in the amount of $40,524, the exact figure Giacchi reported in his tax document.

(3)      The IRS assesses tax for 2001 – after which Giacchi files a tax return

For 2001, the IRS completed its investigation of Giacchi's tax liability on October 4, 2004, and assessed $29,120 of tax. Trial Ex. D-2. Eight weeks later, on November 29, 2004, Giacchi filed a form purporting to be his 2001 tax return. Trial Ex. P-6. This document stated that Giacchi's total tax for 2001 was $20,025. Trial Ex. P-6, line 58. On June 20, 2005, the IRS abated $9,095 of the Assessment, Trial Ex. D-2, again leaving a principal tax assessment identical to the tax Giacchi reported in his tax document, $20,025.

(4)      The IRS assesses tax for 2002 – after which Giacchi files a tax return

The IRS completed its investigation for 2002 without Giacchi's tax return and on February 7, 2005, assessed $25,229.40 of tax. Trial Ex. D-3. Then, in June of 2006, more than a year after the assessment was made against him, Giacchi filed a form purporting to be his 2002 tax return. Trial Tr. 21:14–19. This document stated that Giacchi's total tax for 2002 was $19,678. Trial Ex. P-7, line 61. On October 9, 2006, the IRS abated $5,551.40, Trial Ex. D-3, leaving a principal tax assessment of $19,678, the same figure Giacchi reported in his tax document.

(5)     Giacchi's Chapter 7 bankruptcy case in 2010 and Chapter 13 bankruptcy case in 2012

Giacchi filed a Chapter 7 bankruptcy petition in 2010, Trial Tr. 11:5-6, and received a discharge on March 29, 2011, Tr. Ex. P-1.  He filed a Chapter 13 bankruptcy case over a year later, on April 2, 2012.

III.    **ANALYSIS**

A.      Giacchi's post-assessment tax documents do not qualify as returns under 11 U.S.C. § 523(a)

A federal tax liability is subject to discharge only if the debtor filed a return with respect to the tax. 11 U.S.C. § 523(a)(1)(B)(i).

Section 523(a) states, "[f]or purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)."  11 U.S.C. § 523(a).  This definition was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1] It is codified in an unnumbered paragraph at the end of § 523(a), and is often referred to as the "hanging paragraph."  Income tax returns must be filed by April 15 of the following year. 26 U.S.C. § 6072(a).  Giacchi's tax documents filed for 2000, 2001, and 2002 did not meet the requirements of applicable nonbankruptcy law because they were filed too late – after the tax assessments had been made.  Accordingly, the post-assessment filed tax documents are not "returns," and the tax liabilities for 2000, 2001, and 2002 are not discharged.  As such, under the hanging paragraph, his tax liabilities for the years at issue are excepted from discharge. See In re Payne, 431 F.3d 1055, 1060 (7th Cir. 2005) (Easterbrook, J., dissenting); see also

---

[1]      BAPCPA applies to cases filed on or after October 17, 2005. Robin J. Miller, Annotation, Validity, Construction and Application of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), 2005 A.L.R. Fed. 2d 3 (2005).

In re McCoy, 666 F.3d 924, 932 (5th Cir. 2012) (holding that late-filed state tax document cannot qualify as a "return" under § 523(a)).

Giacci argues against this conclusion by reference to Collier on Bankruptcy. Giacchi's Br. 8. Collier opines that the term "applicable filing requirements," as used in § 523(a), does not include the requirement to file a return on time. Collier on Bankruptcy ¶ 523.07[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). Instead, this term "refers to considerations other than timeliness, such as the form and contents of a return and the place and manner of filing." Id. Collier cites two cases in support of this view:  Martin v. United States, 482 B.R. 635 (Bankr. D. Colo. 2012), and In re Wogoman, 475 B.R. 239 (10th Cir. B.A.P. 2012). See Collier at ¶ 523.07 n.55e.

Neither of these cases is a reason to reject the interpretation of the hanging paragraph articulated by Judge Easterbrook's dissenting opinion in Payne or adopted by the Fifth Circuit in McCoy. Martin held that "applicable filing requirements" did not include timeliness. 482 B.R. at 639. But Martin was later reversed by the district court. See In re Martin, 500 B.R. 1, 2 (D. Colo. 2013), aff'd sub nom. In re Mallo, 774 F.3d 1313 (10th Cir. 2014), cert. denied sub nom. Mallo v. I.R.S., 135 S. Ct. 2889 (2015). On appeal, the district court noted that the United States did not argue that "applicable filing requirements" included timeliness.[2] Id. at 7. For that reason, the district court

---

[2] The government did not advance this argument because it would lead to an overly harsh result: a taxpayer who filed only one day late would be forever denied a discharge. Id. at 7. Indeed, in the case at bar, the court below agreed that this rule could be overly harsh: "Under this approach, a debtor would never be able to discharge a federal income tax obligation under Section 523(a)(1)(B) if the document that the debtor purports to be a return was tardily filed. That would clearly constitute an absurd and incorrect result." Giacchi v. United States, Adv. No. 12-00465, slip op. at 2 n.2 (Bankr. E.D. Pa. Jan. 9, 2014), ECF No. 73.

declined to adopt the argument.[3] Id. The Wogoman court expressed skepticism about the argument, but did not definitively reject it:

> Fortunately, we do not have to conclusively define the boundaries of the hanging paragraph in this case because it does not involve a tax return that was merely filed "late." Here, we are presented with debtors, who without any reason justifying the delay, did not file their 2001 return until August 2006, after the IRS had completed the burdensome process of determining their tax liability . . . . Regardless of whether the hanging paragraph creates a much more restrictive rule than the . . . test developed by courts pre-BAPCPA, the 2001 return filed by the [debtors] post-assessment does not meet the applicable filing requirements, and therefore, their 2001 tax liability is excepted from discharge.

475 B.R. 239, 249 (10th Cir. B.A.P. 2012).

For other reasons too, Giacchi's post-assessment tax documents do not constitute "returns" within the meaning of § 523(a). Before BAPCPA added the hanging paragraph, courts applied a four-part test to determine whether a late-filed tax return qualified as a "return" under § 523(a). See In re Wogoman, 475 B.R. at 245. To constitute a return under this test, known as the Beard test, a document must meet four requirements: "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law."[4]  Id. (quoting In re Hindenlang, 164 F.3d 1029 (6th Cir. 1999)). For an otherwise proper return that was filed late, the fourth requirement is the critical one. Id. at 246.

A return filed after the Internal Revenue Service has done its own investigation and assessed tax does not represent an honest and reasonable attempt to satisfy the requirements of the tax law. See In re Payne, 431 F.3d 1055 (7th Cir. 2005); Moroney v. United States, 352 F.3d 902 (4th Cir. 2003);

---

[3]     Instead, the district court applied the test as it existed prior to BAPCPA and held that the debtor's late-filed tax documents did not qualify as tax returns because they were filed after the IRS had already made assessments for the years in issue. Id.
[4]     This test was first stated by the Tax Court in Beard v. Commissioner, 82 T.C. 766 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986), and is thus often called the "Beard test."  See Wogoman, 475 B.R. at 245-46.

United States v. Hindenlang, 164 F.3d 1029 (6th Cir. 1999); see also United States v. Hatton, 220 F.3d 1057 (9th Cir. 2000) (denying taxpayer a discharge because taxpayer did not attempt to cure his failure to file return until after IRS had already assessed tax). A tax return no longer serves any tax purpose once the Internal Revenue Service has assessed the tax. Hindenlang, 164 F.3d at 1034-35.

At trial, Giacchi had the opportunity to prove that his tax documents served a tax purpose, even though they were filed after the IRS had already assessed tax.  He advanced only one such purpose: his post-assessment tax documents informed the IRS that he actually owed less tax than assessed by the IRS.  Trial Tr. 111–12.  The IRS did abate tax so that its assessments matched the total tax figures Giacchi reported on his tax documents.[5]   However, that outcome as a result of Giacchi's tax documents was not a legitimate tax purpose under the Beard test.

Giacchi's asserted tax purpose is the same one identified by the debtor in Moroney. 352 F.3d at 906. However, the Fourth Circuit held that this did not constitute a legitimate tax purpose:

> The relevant inquiry is whether Moroney made an honest and reasonable effort to comply with the tax laws, and not whether Moroney's eventual effort had some effect on his tax liability. Under Moroney's approach, the availability of discharge would turn on the IRS's accuracy in assessing taxes, rather than on Moroney's sincerity and diligence in complying with the tax code. In effect, Moroney failed to provide the IRS with the very information it needed to accurately assess his taxes, and now he seeks to benefit from the IRS's resulting imprecision (which was hardly surprising, given Moroney's lack of assistance). Moroney's approach would only discourage the IRS from abating debtors' tax liabilities—especially when any adjustment, no matter how small, would lead to a discharge of the entire tax liability, no matter how large.

Id. The bankruptcy court below applied this reasoning and held that Giacchi's tax documents did not serve a legitimate tax purpose. Giacci, Adv. No. 12-00465, slip op. at 3 n.5 (Bankr. E.D. Pa. Jan. 9,

---

[5]      Giacchi argues that he proved the IRS used the numbers from his tax documents to prepare its proof of claim. Giacchi's Br. 11. There was never any question about whether the IRS used Giacchi's numbers, though. Counsel for the United States noted in his opening statement at trial, "the United States will show that the assessments almost precisely equal the amounts of tax that Mr. Giacchi reported on his tax return forms for the years in question." Trial Tr. 8:21–24.

2014), ECF No. 73.  No persuasive argument has been presented on appeal for rejecting the Moroney reasoning.[6]

Giacchi's post-assessment tax documents do not qualify as "returns" under 11 U.S.C. § 523(a). For that reason, Giacchi's federal tax liabilities for 2000, 2001, and 2002 are excepted from discharge.

B.    The Bankruptcy Court is affirmed in its finding that the tax assessments are accurate and correct

Tax assessments by the Internal Revenue Service are presumed to be correct.  Francisco v. United States, 267 F.3d 303, 319 (3d Cir. 2001); Resyn Corp. v. United States, 851 F.2d 660, 662–63 (3d Cir. 1988); accord United States v. Balice, 505 F. App'x 142, 146 (3d Cir. 2012). Once the IRS shows that the taxes were assessed, by introducing certified records of the assessments, the burden shifts to the taxpayer to show that the assessments are incorrect. Balice, 505 F. App'x at 146; United States v. Byock, 130 F. App'x 594, 595 (3d Cir. 2005); Psaty v. United States, 442 F.2d 1154, 1159 (3d Cir. 1971). The taxpayer cannot carry this burden simply by showing the assessments are "erroneous in some respects." Francisco,  267 F.3d at 319 (quoting United States v. Janis, 428 U.S. 433 (1976)). The taxpayer must prove the correct amount of his tax liability.[7] Id. This allocation of the burden of proof under the tax law governs tax litigation in bankruptcy court. See Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 26 (2000).

---

[6]    Instead, Giacchi says only that there is something improper about the IRS using his postassessment tax documents to decrease his liability while also maintaining that the tax documents have no legitimate tax purpose. Giacchi's Br. 10–11.

[7]    Francisco v. United States was a tax refund action. That is, the taxpayers paid the assessment and then sued for a refund. 267 F.3d 303, 306 (3d Cir. 2001). Accordingly, the Third Circuit explained that "the taxpayer bears the burden of proving the amount he is entitled to recover." Id. at 319 (quoting United States v. Janis, 428 U.S. 433 (1976)). This burden of proof is the same whether the taxpayer is seeking a refund of taxes already paid or the government is seeking to collect taxes owed. Psaty v. United States, 442 F.2d 1154, 1158–60 (3d Cir. 1971).

The government proved that the IRS assessed taxes against Giacchi for the years in question. Trial Exs. D-1, D-2, D-3.  The assessments of principal tax matched the total tax Giacchi himself reported on his tax return forms.[8]  Giacchi did not present evidence or argument that his principal tax liabilities for the years in question were less than the amounts assessed.[9]

Instead, Giacchi argued that his current outstanding liabilities for these tax years are lower than the amounts the government claims. Giacchi's argument was based on his assumption that the IRS had collected $25,856 that the certified transcripts do not show.[10]  Giacchi did not testify or offer

[8]	There are only three differences between the assessments and the figures Giacchi reported on his tax documents. First, for tax year 2000, Giacchi reported that he had $26,455 in federal income tax withheld during the tax year. Trial Ex. P-5, line 58. The certified transcript, however, shows that Giacchi had only $26,452 in federal income tax withheld during the tax year. Trial Ex. D-1. Giacchi did not testify or present any evidence beyond the bare purported tax return that the withholding was anything other than the $26,452 reflected in the IRS certified transcript. Giacchi's bare tax document is insufficient to rebut the presumption that the certified transcript is correct.

Second, also for tax year 2000, Giacchi reported that he had $3,382 in excess social security tax withheld during the tax year. Trial Ex. P-5, line 61. The certified transcript, however, does not show any such withholding. Trial Ex. D-1. Giacchi did not testify or present any evidence beyond the bare tax document that he actually had $3,382 in excess social security tax withheld. Giacchi's bare tax document is insufficient to rebut the presumption that the certified transcript is correct.

Third, for tax year 2001, Giacchi initially reported that his total tax was $20,025. Trial Ex. P-6, line 58. Then, he filed amended tax return documents reporting that his total tax was actually $27 less, $19,998. Trial Ex. P-6a. The certified transcript, however, shows that the IRS assessed principal tax—not including interest and penalties—of $20,025. Trial Ex. D-2. Giacchi did not testify or present any evidence beyond the bare amended tax return document that his total tax was anything other than the $20,025 reflected in the IRS certified transcript. Giacchi's bare amended tax return document is insufficient to rebut the presumption that the certified transcript is correct.

[9]	The three differences described in footnote 9 above are the only areas where Giacchi arguably presented evidence or argument that his principal tax liabilities were other than what the IRS had assessed.

[10]	Giacchi's calculations of his current outstanding liabilities are shown in Trial Exhibit P-10. On cross examination, Giacchi testified about his assumption:

Q.	Is it correct that on Page 1 of Exhibit P-10 next to the line marked Tax Collected by IRS from Inception you assumed that the IRS calculate, collected $25,856 for tax year 2000?

A.	That would be my assumption, yes.

Q.	Okay. And that assumption means that you had a balance due from the IRS for that tax year of $15,169, is that correct?

A.	That's correct.

Q.	And that $15,169 appears again on the second page of Exhibit P-10, is that correct?

other evidence that he had in fact paid this amount, or that the IRS had collected it from him involuntarily. The certified transcripts do not reflect such a payment or collection. Giacchi's assumption is insufficient to rebut the presumption that the certified transcripts correctly reflect the assessments and payments.

The bankruptcy court rejected Giacchi's argument that his tax liabilities were lower than the United States claimed because the court was unable to understand Giacchi's confusing calculations. Giacci, Adv. No. 12-00465, slip op. at 4 n.6 (Bankr. E.D. Pa. Jan. 9, 2014), ECF No. 73. Giacchi argues that the learned bankruptcy judge could not understand because "he tried to apply Aristotelian

---

A. That's correct.

Q. And you calculated your adjustments for tax year 2000 based on that $15,169, is that correct?

A. That's correct.

Q. Okay. The same thing is true for tax year 2001, is that correct?

A. That's correct.

Q. And you found, you came up with the numbers that you assumed the IRS collected by subtracting the amount shown on Exhibit P-2, which is a Notice of Federal Tax Lien, or, rather, a facsimile copy of a Notice of Federal Tax Lien, is that correct?

A. That's correct.

Q. You subtracted that figure from the amount shown on the Government's proof of claim as due for principal tax for the various years, is that correct?

A. That's correct.

MR. DUNN: Objection. I think that counsel has the subtraction backwards.

MR. RUSSELL: He subtracted 25,000 from zero for tax year 2000.

BY MR. RUSSELL:

Q. Is that correct, to come up with a collection of $25,000?

A. Well, the, the amount on the proof of claim is zero for that particular year and the amount of the lien was 25 and change. Therefore, my assumption was when I did the calculations is that the Government had, had to have collected $25,856 for that number to go to zero.

Trial Tr. 92–94.

logic to the higgledy-piggledy Tax Code, and that degraded the rest of his findings." Giacchi's Br. 12. This is incorrect. Giacchi simply failed to prove that his tax liabilities were anything other than the amounts assessed. He submitted confusing calculations that relied on an unproven assumption that Mr. Giacchi had paid—or the IRS had collected from him involuntarily—substantially more tax than the evidence showed.

## IV.   **CONCLUSION**

For the reasons set forth hereinabove, the Court affirms the Bankruptcy Court's Order of January 9, 2014, in all respects.  An appropriate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge